# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 5034 | **DATE** | 3/22/2004 |
| **CASE TITLE** | USA ex rel. ANTHONY GUEST vs. THOMAS PAGE, etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. 2254 is denied. Enter Memorandum Opinion and Order. All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 23 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 154 |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., ANTHONY GUEST, # N-32658, | )<br>)<br>) |
| Petitioner, | ) No. 95 C 5034 |
| v. | )<br>) MAR 2 3 2004 |
| THOMAS PAGE, Warden, Menard Correctional Center, | ) Judge William J. Hibbler<br>) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

After a bench trial in the Circuit Court of Cook County, petitioner, Anthony Guest ("Guest"), was convicted of murder and sentenced to death. After his direct and post-conviction appeals failed, Guest petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 11, 2003, former Illinois Governor George Ryan commuted Guest's death sentence to natural life in prison without the possibility of parole. Before this court is Guest's petition for a writ of habeas corpus amended after the commutation of his death sentence. For the reasons stated below, the court denies Guest's habeas petition in its entirety.

I. BACKGROUND

A. Procedural History

Following a bench trial before Judge Maurice Pompey in the Circuit Court of Court County, Illinois, Guest was convicted of the murder of John Geever, attempted murder, aggravated battery and two counts of unlawful weapons use. At a separate sentencing hearing, Judge Pompey found Guest eligible for the death penalty on the grounds that Guest had been convicted of a prior California murder, which is a statutory aggravating circumstance. Judge Pompey concluded that there were no

1

/54

mitigating factors sufficient to preclude imposition of the death penalty, and therefore sentenced Guest to death.[1]

Guest filed a direct appeal with the Illinois Supreme Court, which upheld Guest's conviction and death sentence on December 19, 1986. *People v. Guest*, 503 N.E.2d 255 (1986) *(Guest I)*. Guest then filed a post-conviction petition with the Circuit Court of Cook County. On March 11, 1992, the Cook County Circuit Court granted the State's motion to dismiss Guest's post-conviction petition. The Illinois Supreme Court affirmed the Circuit Court's dismissal of Guest's post-conviction petition on May 18, 1995. *People v. Guest*, 655 N.E.2d 873 (1995) *(Guest II)*. On April 16, 1997, Guest filed a petition for writ of habeas corpus in this court.

**B. Trial Testimony**

The following facts, which Guest does not challenge, are drawn from the Illinois Supreme Court's ruling on Guest's direct and post-conviction appeals. 28 U.S.C. § 2254(e)(1); *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002) (unless a habeas petitioner provides clear and convincing evidence to the contrary, a determination of a factual issue by a state court is presumed correct for the purposes of habeas review). On February 5, 1981, Guest entered a Chicago grocery store with friend, John Marlow. Ferris King, a security guard, observed Guest place toothpaste and a toothbrush in his pocket. King approached Guest, identified himself, and asked Guest to accompany him to his office located in the basement of the building. Guest complied. When the two men arrived at the office, Guest confronted King with a handgun.

---

[1] Judge Pompey also sentenced Guest to 30 years for attempted murder. This sentence was to run consecutively to two sentences in Tennessee for armed robbery and bank robbery and also consecutively to two sentences of 35 years to life imprisonment in Missouri for two armed robberies.

2

Guest then led King from the office to an employee's cafeteria also located in the basement. Three employees – Joanne Bailey, Marlean Washington, and Gary Henderson – were in the cafeteria when the two men entered. When two of the employees attempted to flee, Guest began firing in their direction. King then reached for his gun, exchanged several shots with Guest, and was hit once in the shoulder. Guest then fled down a south corridor, up a flight of stairs, and out the store's front door. King chased Guest but abandoned his pursuit upon finding John Geever, another employee, wounded and lying in the south corridor. Geever subsequently died of a gunshot wound. After the shooting, King detained Marlow, the individual who accompanied Guest to the store. Marlow provided the police with information that established Guest's identity as the gunman.

At trial, Bailey testified that she saw Geever exit the cafeteria shortly before King and Guest arrived. The parities stipulated that if Washington were to testify she would state that she was in the cafeteria with Baily and Henderson when Guest fired the first shot. The parties also stipulated that on the day after the shooting, employees Henderson, King, Bailey, and Washington identified Guest's picture from a photo array, and that King and Washington identified Guest from a lineup before trial. The parties also stipulated that the bullet recovered from Geever's body was not fired from King's gun.

## II. MOOT SENTENCING CLAIMS

On January 11, 2003, former Illinois Governor George Ryan commuted Guest's death sentence to natural life in prison without the possibility of parole. Since Guest's commutation, the Illinois Supreme Court has issued decisions on direct appeal and modified decisions on the denial of rehearing in other capital cases. In each case, the Illinois Supreme Court concluded that former Governor Ryan's commutation of the defendant's death sentence rendered moot any capital sentencing claims. *See, e.g., People v. Ceja*, 204 Ill.2d 332 (2003)(commutation removes judicially

3

imposed sentence replacing it with a lesser, executively imposed sentence); *People v. Lucas*, 203 Ill.2d 410 (2003)(same); *People v. Miller*, 203 Ill.2d 433 (2003)(same). The Seventh Circuit has similarly decided the issue. *See, e.g., Wilson v. Mote*, No. 03-1943, slip. op. at 1 (7th Cir. June 18, 2003) (commutation mooted prisoner's habeas claims based on his death sentence). Accordingly, Guest has amended his habeas petition to delete the claims challenging his death sentence and leaves only two claims for the court to address, each relating to the guilt phase of Guest's trial. The court considers the merits of these claims under the following standards.

## III. HABEAS STANDARDS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 404. To demonstrate an "unreasonable application" of clearly established federal law, a habeas petitioner must establish that the state court unreasonably applied the controlling legal rule to the facts of the case. *Id. at* 407. Moreover, the state court's unreasonable application of Supreme Court precedent must be more than incorrect or erroneous. Rather, it must be "objectively" unreasonable. *Lockyer v. Andrade*, 123 S.Ct. 1166, 1174 (2003); *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)(state court decision must lie "well outside the boundaries of permissible differences of opinion.").

4

## IV. PROCEDURAL DEFAULT

Before a federal court will consider a habeas corpus petition, a petitioner must satisfy several procedural requirements. First, a petitioner must exhaust state remedies – this is, the petitioner must give the state's highest court an opportunity to address each claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). To satisfy this requirement, a petitioner must fairly present to the state judiciary both the operative facts and legal principles that control each claim. *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001).

Second, the petitioner must comply with state procedural rules to avoid procedurally defaulting his claims. Accordingly, a habeas claim may be procedurally defaulted if the state court rests its judgment on an independent and adequate finding of procedural default under state law. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *see also Wright v. Walls*, 288 F.3d 937, 947 (7th Cir. 2002) (waiver is an independent and adequate state procedural ground in Illinois). Moreover, failure to appeal the dismissal of a post-conviction petition in Illinois state court will be treated as an independent and adequate state ground (as if a state court had actually found the claims procedurally barred) preempting further habeas review in federal court. *Boerckel*, 526 U.S. at 839. A federal court, however, may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). With these standards in mind, the court will address Guest's claims.

## V. GUEST'S HABEAS CLAIMS

### A. Ineffective Assistance of Trial Counsel

Guest raised the ineffectiveness of his trial counsel on post-conviction review. The Illinois

5

Supreme Court reviewed the claim's merits and denied relief. *See Guest II*, 655 N.E.2d at 880. Thus, Guest has fully litigated the issue in state court and this court is free to perform its own substantive review under ADEPA's standards.

Guest's ineffective assistance of counsel claim focuses on his counsel's overall representation, rather than on any specific error or omission that his counsel may have made. Guest argues that his lawyer's incompetence was so egregious that it failed to subject the State's case to meaningful adversarial testing. Guest's "meaningful adversarial testing" claim derives from the United States Supreme Court's decision in *United States v. Cronic*, in which the Court acknowledged that certain circumstances are so prejudicial that ineffective assistance of counsel is presumed. 466 U.S. 648, 658-662. One of the circumstances identified by the *Cronic* Court is when trial counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. *Id.* at 659.

To establish his *Cronic* claim, Guest first criticizes his trial counsel's trial strategy. He claims that trial counsel inappropriately stipulated to the majority of State's evidence, including virtually all adverse witness testimony. Guest further faults his counsel's inability to articulate a viable defense theory or present witnesses on his behalf. Lastly, Guest criticizes trial counsel's performance during opening and closing statements. Specifically, Guest takes issue with his counsel's concessions during opening statements that Guest fired the shots that wounded security guard King. Guest further contends that trial counsel's closing statement was inadequate and wholly unpersuasive.

Pursuant to ADEPA, this court's review begins with Illinois Supreme Court analysis of the claim to determine if that court's decision was contrary to or involved an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). To reach its conclusion, the court first noted that review of counsel's performance is generally deferential, particularly regarding matters of

6

trial strategy. *See Guest II*, 655 N.E.2d at 879. The court then considered trial counsel's decision to concede Guest's guilt to a number of charges, including aggravated battery, while maintaining his innocence regarding the murder charge. *Id.* at 879-880. The court also reviewed trial counsel's stipulations to many of the State's exhibits and witnesses. *Id.* After thoroughly discussing a number of state and federal decisions, the court concluded that trial counsel's performance did not rise to the level of *per se* ineffectiveness described in *Cronic*. *Id.* at 880. The court finds that the Illinois Supreme Court's decision represents a reasonable application of *Cronic*.

Generally, broad claims of incompetence do not necessary support an inference that the circumstances were so egregiously prejudicial that ineffective assistance is presumed. *Hollenback v. United States*, 987 F.2d 1272, 1275 (7th Cir. 1993). This is especially true when the criticisms attack counsel's overall trial strategy. *See Strickland*, 466 U.S. at 690 (counsel's strategic choices do not often support claims of ineffective assistance). While is true that Guest's counsel stipulated to a great deal of adverse evidence, it is also true that much of the evidence against Guest was particularly strong. Perhaps by admitting what could not be denied, Guest's counsel was attempting to buttress his credibility with the judge. *See United States v. Simone*, 931 F.2d 1186, 1194 (7th Cir. 1991) (confronted with overwhelming evidence, it was not unreasonable for counsel to concede the defendant's guilt to lesser drug charges but contest charges which carried greater punishment). The plentiful evidence against Guest's presented counsel with a daunting task. To confront this task, trial counsel decided to contest the most serious charge, while admitting the lesser offenses. While this strategy may not have been perfect, it was not illogical either.

Moreover, the record confirms that counsel did in fact subject the State's case to adversarial testing. For instance, counsel raised repeated objections to the State's failure to produce the bullet

7

fired at security guard King. In fact, counsel moved for a mistrial based on the State's loss of evidence. Counsel also challenged the testimony of State's witnesses, and moved to strike the testimony of at least one witness when that witness testified beyond stipulated statements. Lastly, counsel pursued his defense theory during trial and during opening and closing statements and cross examined the State's witnesses in a manner consistent with this theory. This is not the type of egregious case where counsel has entirely failed to subject the prosecution's case to meaningful adversarial testing. See, e.g., Cooks v. Ward, 165 F.3d 1283, 1296 (10th Cir. 1998) (despite counsel's failures at trial, prejudice could not be presumed where he was present in the courtroom, conducted limited cross-examination, made objections, and gave a closing argument). Accordingly, the court finds that Illinois Supreme Court's decision that trial counsel's assistance was not *per se* ineffective, was consistent with the facts and circumstance of the present case. See Rice v. McCann, 339 F.3d 546, 548 (7th Cir. 2003)(reasonable state court application of federal law is at least minimally consistent with facts and circumstances of case). Guest's first claim is therefore denied.

## B. Judicial Bias

Guest's second claim is that he was denied a fair trial because Judge Pompey was biased against him. Specifically, Guest claims that Judge Pompey convicted and sentenced him to death to offset his reputation as an usually lenient judge. Before discussing the claim's merits, the court must briefly address whether Guest has procedurally defaulted this claim.[2]

Guest did not raise his judicial bias claim in state court. Generally, this constitutes grounds

---

[2]Arguably, the State has waived this issue as its recently filed memoranda responding to Guest's amended petition does not raise procedural default. But given the considerable passage of time since the State first presented its arguments for procedural default, the court will attribute the State's recent omission to inadvertence.

for procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (requiring exhaustion of state remedies). But the exhaustion doctrine is not without exception. A federal court may review a non-exhausted constitutional claim if a petitioner can demonstrate *cause* for the procedural default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). One well-recognized example of cause occurs when the factual or legal basis of the claim was not reasonably available to the petitioner. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

The record reveals that the vast majority of evidence relating to Judge Pompey's corruption surfaced during the March 1993 trial and conviction of Judge Thomas Maloney. *See United States v. Maloney*, 71 F.3d 645 (7th Cir. 1995). Judge Maloney was one of many dishonest judges exposed and convicted through "Operation Greylord," a labyrinthine federal investigation of judicial corruption in Chicago. During Judge's Maloney trial, witnesses testified that Judge Pompey was one of the judges who frequently accepted bribes in criminal cases. Before this time, Guest had no real evidence of Judge Pompey's corrupt practice.

The State argues that a 1983 newspaper article alluding to Judge Pompey's possible corruption should have alerted Guest or his counsel of his potential judicial bias claim. But it is not reasonable to assume that Guest or his counsel would have read this single newspaper article, and even if they had, it is highly doubtful that the article's contents would have provided Guest with the necessary facts on which to base a viable constitutional claim. Accordingly, the court finds that Guest was unaware of the facts underlying his judicial bias claim when he filed his post-conviction appeal to the Illinois Supreme Court in 1992. Guest has therefore demonstrated cause to excuse his procedural default.

Guest's claim raises a form of judicial bias known as "compensatory" bias. This type of bias occurs when a judge, who is taking bribes from some criminal defendants in some cases, engages in a sort of compensatory bias against defendants who do not bribe the judge, so that the judge avoids being perceived as uniformly and suspiciously "soft" on criminal defendants. *See Bracy v. Gramley*, 520 U.S. 899, 905 (1997) ("*Bracy I*") (defining "compensatory" bias). To prove compensatory bias, a petitioner must demonstrate two elements – that the judge was 1) actually biased; and 2) in petitioner's own case. *See Bracy v. Schomig*, 286 F.3d 406, 409 (7th Cir. 2002) ("*Bracy II*").[3]

But before considering these concepts, the court must address a preliminary issue neglected by the parties. Public officials are generally entitled to a presumption that they have "properly discharged their official duties." *Bracy I* at 909. Accordingly, a petitioner seeking to prove judicial bias in a specific case, must first overcome this presumption of impartiality. *Id.* In *Bracy I*, the Supreme Court found that the presumption had been sufficiently rebutted by the substantial evidence of corruption presented at Judge Maloney's criminal trial and conviction. *Id.* In contrast, charges were never brought against Judge Pompey and his character has never been impeached in an official forum. But, as more fully discussed below, numerous witnesses with first-hand knowledge have testified that Judge Pompey routinely accepted bribes and fixed cases. Even though Judge Pompey's corruption was never exposed in a public trial, Guest's counsel has unearthed a considerable amount of distressing evidence that casts serious doubt on Judge Pompey's integrity.

---

[3] It is not at all clear that the *Bracy II* Court intended to establish a definition of compensatory comprised of two distinct elements. It probably makes more sense to consider the two elements as part of *same* element, but expressing different concepts. But since the parties have presented their evidence and structured their arguments around this interpretation of *Bracy II*, the court sees no harm in organizing its opinion to accord with the parties' understanding.

10

Accordingly, the court finds that Guest has successfully rebutted the presumption of impartiality normally afforded public officials. With the presumption rebutted, the court turns to Guest's compensatory bias claim.

1. Actual Bias

To demonstrate actual bias, a petitioner must do more than show that a judge was actually biased his case. Rather, it appears that the petitioner must establish that the judge engaged in pattern of corruption that extended far beyond the petitioner's specific case. *See Bracy*, 286 F.3d at 410-414, 421-22 (2002). This includes both instances of actual bribe-taking and related compensatory bias. *Id.* This is a difficult hurdle to overcome, and the court has allowed Guest's counsel to conduct extensive discovery to prove his claim. Counsel has inspected U.S. Attorney and FBI files, and deposed numerous witnesses, including court personnel, defense attorneys, a federal prosecutor, and an FBI agent. Although counsel's commendable efforts have revealed much disturbing evidence, the court must conclude that Guest has not satisfied the heavy burden of proving Judge Pompey's actual bias. In reaching this difficult conclusion, the court considered the following evidence.

The U.S. Attorney's files indicate that certain corrupt defense attorneys would routinely have their cases assigned to Judge Pompey. Further, numerous witnesses interviewed by the FBI in connection with a federal investigation into judicial corruption in Cook County, claim that Judge Pompey routinely accepted cash bribes in exchange for favorable dispositions in serious criminal cases, however most of this testimony references Judge Pompey's practices when he was presiding over the preliminary hearing courtroom. Very little, if any, testimony relates to Judge Pompey's alleged bribe-taking around the time of Guest's trial. Here, the U.S. Attorney and FBI testimony

11

only establishes that Judge Pompey may have accepted bribes at some point in his judicial career, but is quite vague about whether these activities occurred around the time of Guest's trial.

Guest also offers the deposition testimony of numerous witnesses, including defense attorneys, court personnel, and an FBI agent. While this testimony is generally consistent with the FBI and U.S. Attorney evidence, it does not add anything particularly useful. Of these witnesses, Lucius Robinson's testimony is the most alarming. Robinson, who was Judge Pompey's personal bailiff, claims that he passed bribes to the judge on hundreds of occasions. But Robinson's testimony does not include details regarding the parties involved, dates, cases names, or locations of the bribes. In fact, of all these witnesses, the only supported claim of specific bribe-taking comes from the deposition testimony of FBI agent Hake. Hake testifies that he gave Robinson money to influence Judge Pompey in a case that occurred around the time of Guest's murder trial.[4] But even this specific claim is of limited value, as Hake does not say whether Robinson actually delivered the bribe to Judge Pompey or whether Robinson kept the money for himself.

Guest also presents the statement of former United States Attorney, Scott Mendeloff, who was a federal prosecutor who investigated Judge Pompey's corruption in the late 1980's. Mendeloff's testimony does not provide the court any additional evidence of Judge Pompey's alleged corruption beyond what is already discussed above. Mendeloff merely explains that his interviews with Robinson and various corrupt defense attorneys revealed that these people said that Judge Pompey accepted bribes. This testimony is not only heresay, but is also offered without detail or context.

Finally, without specific references to any discovered evidence, Guest claims that Judge

---

[4] Hake is referring to the *Torres* case, which was a case contrived by the FBI to catch Robinson and Pompey in the act of bribe-taking.

12

Pompey fixed a number of murder cases around the time of Guest's trial. Guest cites the *Farmer* case, where a "source" apparently told the FBI that payments were made for the defendant's acquittal. Guest also cites the *Cummings* case where Robinson was apparently "signaling" the defendant during trial and the defendant got a light sentence. This evidence is anecdotal and therefore unhelpful.

In sum, the above evidence does not demonstrate Judge Pompey's "actual bias," as those terms are interpreted in *Bracy II*. And perhaps most damaging to Guest's claim is that he does not offer any evidence, direct or circumstantial, admissible or inadmissible, that Judge Pompey ever engaged in compensatory bias. The court must therefore conclude that Guest has not satisfied the first concept of his compensatory bias claim.

### 2. In Guest's Case

Even if Guest's could somehow establish Judge Pompey's corrupt nature, Guest has provided little, if any, evidence that Judge Pompey engaged in compensatory bias *in his case*. Guest claims his jury waiver was the product of collusion between Judge Pompey and Robinson so that Judge Pompey could impose the death penalty. But Guest does not provide any credible evidence that the decision to waive the jury was anything but his own voluntary decision. Guest also claims that his death sentence was the first and only time in Judge Pompey's career that he imposed the death sentence and this somehow reveals his corrupted motives. Perhaps Guest's case was the first opportunity Judge Pompey had to impose the death penalty. Or maybe Guest's case was the single most gruesome murder case ever tried before him. Without more information, the Guest's deduction remains mere conjecture.

It is instructive to compare the quality of the above evidence with the evidence available in

13

*Bracy II*. Judge Evans[5] found that Judge Maloney had appointed a defense counsel whom the judge personally knew through his associations with Chicago organized crime families. *See Bracy II*, 286 F.3d at 414. The court also found that Judge Maloney's discretionary decisions during Bracy's sentencing were particularly egregious. *Id.* 416-419. These facts, among others, raised an inference of bias that permitted Judge Evans to conclude that Bracy's sentencing hearing was tainted by Judge Maloney's compensatory bias. *Id. at* 419. The same cannot be said of Guest's evidence, which consists entirely of unsupported speculation. Thus, Guest has also failed to demonstrate that Judge Pompey was biased *in his case*.

### C. Request For An Evidentiary Hearing

Finally, Guest requests an evidentiary hearing under Section 2254(e)(2), but does not specify what he hopes to accomplish at such a hearing. Federal habeas courts are not an alternative forum for trying issues and facts that a habeas petitioner did not pursue at the state court level. *See Williams*, 529 U.S. at 437; *see also Boyko v. Parke*, 259 F.3d 781, 789-90 (7th Cir. 2001)(federal habeas court's ability to hold evidentiary hearing for petitioner to supplement an underdeveloped state court record is "severely circumscribed"). Section 2254(e)(2) provides that, if a factual basis of a claim was not developed in the state court, the federal habeas court "shall not hold an evidentiary hearing" unless the habeas petitioner can show:

(A) the claim relies on -

    (i) a new rule of constitutional law, made retroactive to cases on collateral

---

[5]The Seventh Circuit's decision in *Bracy II* was split into two parts, with each part commanding a majority of the court. The part of the judgment holding that Bracy was entitled to a new sentencing hearing because of compensatory bias was agreed to by eights justices and written by Judge Evans. *See Bracy II*, 286 F.3d at 408.

review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Rather than develop his argument under the above requirements, Guest cursorily maintains that he is entitled to an evidentiary hearing. Accordingly, Guest has failed to argue any facts to satisfy Section 2254(e)(2)'s strict standards. Guest's request for an evidentiary hearing is therefore denied.

## VI. CONCLUSION

For the reasons stated above, the court denies Guest's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case is terminated and any pending motions are denied as moot.

Date: 3/22/04

ENTERED:

WILLIAM J. HIBBLER
United States District Court Judge